All rise. The United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good afternoon. Welcome to the Ninth Circuit Court of Appeals and to our Pasadena Courthouse. This is the time set for the case of Cynthia Leo Montoya v. United States of America. The parties are ready to proceed. You may come forward. Well, good afternoon, Your Honor, and may it please the Court. My name is James Dawson, and I represent Ms. Montoya in this matter. With the Court's permission, I'd like to reserve five minutes for rebuttal. Ms. Montoya asked today that this Court overrule its prior decision in Napier and hold that a district judge must orally pronounce the so-called standard conditions of supervised release at sentencing. That holding would bring this Court's case law into alignment with the Fourth, Fifth, Seventh, and D.C. Circuits. The panel opinion in this case correctly described these other Courts' framework as, quote, easier to apply and as, quote, more true to the statutory text than is Napier. I'm happy at this time to field any questions from the Court or to Ms. Montoya. I have a question. Just factually, the pre-sentence report, including the recommendation, I assume, in the Southern District, the recommendation is supplied to the parties because the national courts don't require that. That is my understanding, Your Honor. And so she knew that the probation office had recommended as the conditions of supervision that the defendant abide by the mandatory and standard conditions. Is that correct? So paragraph 115 of the PSR makes a sort of glancing reference to the standard conditions. No, no, no. It's that the defendant abide by the mandatory and standard conditions of supervision and the following conditions, and then lists some special ones. So the recommendation was to include the standard conditions. Correct. And she had that before she went into the sentencing? That's correct. And she had the opportunity to file objections and did not do so? That is correct. Okay. But our position is. . . Why is it reviewed for plain error? I mean, she knew that was the recommendation. The rules say you're supposed to respond to any objections to the PSR. She knows that's the recommendation on the table. She says nothing about it, and now we're here. So why isn't that plain error? Well, so a few responses, I think, Your Honor. The first is that the PSR does not actually list the standard conditions, nor does it reference the applicable portion of the sentencing guidelines. Are you claiming that you don't know what that means when this intersects with the guidelines and the guidelines specifically refer to mandatory and standard conditions? Well, the Fifth Circuit has held exactly that in an identical case called United States v. Griffith, when a PSR made the same type of glancing reference to the standard conditions without listing them, and then the district judge did not orally incorporate or adopt the PSR in sentencing. The Fifth Circuit says that's not good enough, and that's materially different than what happened in the Diggles case. In Diggles, the PSR at issue actually listed the special conditions, and then at the sentencing hearing, the district judge said, I am adopting those special conditions. None of that happened here. The standard conditions are not listed in the PSR, and they were not orally incorporated at the hearing. What's the objection here? What's that reference to standard conditions? What does that mean? Well, Your Honor, the objection would have matured at the time that the standard conditions became more than a recommendation and actually became part of the sentence. So something can be in the PSR and then not be imposed in the sentence. Criminal Rule 32i makes it very clear that the PSR is just a recommendation, and the defendant has no idea whether or not a recommendation in the PSR is actually going to become a part of the sentence until the district judge says at sentencing that that's what they're going to do. And it's at that time that the defendant would have an opportunity to object. That never happened in this case, and therefore Ms. Montoya did not have an opportunity to object. And for that reason, the panel correctly held that plain error would not apply because this Court's case law has long suggested that the plain error standard does not apply when the defendant does not have an opportunity to object. Can I get you to step at the back a bit? Because, of course, any time we publish, we're concerned about our rule will affect lots and lots of cases. So I'd like to ask a more abstract question that's a little less married to the facts of any particular case and ask what rule you would like us to adopt and how it would work in practice. How much detail would, you know, we have very busy district court judges, right? How much detail do you think is necessary in a courtroom during the sentencing proceeding to give defendant fair notice? So, Your Honor, we are not asking today for a rule that the standard conditions must be literally read. What would be helpful to me is if you would tell me what you are asking. What rule do you think we should adopt, please? So I think the easiest way to state the rule is that the district judge must orally pronounce the standard conditions of supervised release. Okay, so what's that mean? So that means that you have to make a... The judge say, I'm going to, you know, do that. Well, you just said, does the judge have to say this one, this one, this one? Does the judge exactly what would be permissible? No, so... Under your version of the rule. Excuse me, Your Honor. So I think it would be acceptable to say, I have reviewed Section 3553 and Section 3583. I've looked at all of the standard conditions, and I think they're appropriate. A statement like that would be appropriate, subject to a couple of guardrails. One is that this court held in Mapleloo and in Wolfchild that sometimes certain of the standard conditions can implicate what it called a significant liberty interest. So if this was a case where, for example, the standard conditions of supervised release would operate to prevent somebody from... Seeing their child. Seeing their child. In that case, Wolfchild makes it very clear that there's what's called an enhanced procedural obligation. So there you would have to provide more facts. It would have to be record-based findings. And then the second guardrail is that this court's in-bank decision in Cardi says that the finding has to be sufficient to ensure an appellate court that a reasoned decision has been made. And it makes it very clear that that includes an obligation on behalf of the district court to reasonably respond to any objections that are lodged. So could a district court take the bench and say I'm going to impose the conditions itemized in the PSR? Yes. If none of them implicate a significant liberty interest and if no objection is raised, that would be sufficient, Your Honor. We think that complies with the district court's obligation under the Due Process Clause and Rule 43. As long as the defendant had already seen the PSR? Correct. So I think there's a separate question of what sort of guardrails should exist on the incorporation by reference procedure. And we do think that there are a couple of things that if this court is going to go in that direction, it should make clear in its opinion. One is that, Your Honor, as you said, the defendant has to have actually seen the document. The district judge should confirm that they've gone over it with counsel. Another one, as I was mentioning earlier, is that the PSR must actually list the standard conditions or they should be listed in some other document like perhaps a sentencing memorandum. And then the final piece would be that the PSR say the standard conditions as set forth in 5D1.3C of the Sentencing Guidelines. No, Your Honor. The standard conditions must actually be listed. That's what the Diggles... Where does that come from, the Constitution? Well, that's the rule that the Fifth Circuit adopted in Diggles. And the explanation it gave is that the due process right at issue here sounds in notice. And the notice requirement means that a defendant must actually have access to a written list, not just a reference to the Sentencing Guidelines. There must be a written list. That is the only way to ensure that appropriate notice is granted. But if the court provided the Sentencing Guidelines or asked, have you seen the Sentencing Guidelines, then you could refer to a section of the Sentencing Guidelines? Yes, Your Honor. So the Seventh Circuit has been clear that this could be waived if there were some sort of oral colloquy in which, you know... Well, I don't even mean an oral colloquy. I mean giving it on paper. But I'm not sure why you couldn't incorporate a list from the Sentencing Guidelines as long as the defendant had seen it just the same way you could incorporate a list from the PSR. I agree, Your Honor. I mean, the way this works in practice is there is a statutory obligation to deliver a list of the conditions of supervised release, but that doesn't happen until the sentence has run and you're actually going out. What you mean to suggest is that perhaps at the beginning of a sentencing colloquy, maybe there's multiple defendants there, if the judge were to provide a copy of the standard conditions at that point and then confirm later on that they had been read, we'd see no objection to that. It's just that... What about... Some people who have written about this have talked about the fact that it's not just the defendant that needs to be given notice, but also perhaps members of the public. It seems like some of these scenarios that we've been running through here would involve certain circumstances where a defendant might have notice, but not members of the public. Should we be concerned about that? So, Your Honor, there are certain statutory rights that are afforded to victims of crimes, but again, we think so long as there is an opportunity for both the defendant and the victims of the crime to orally be heard at sentencing, that that statutory requirement would be complied with. So if, for example, you were going to say, I'm imposing the standard conditions as they were provided to the defendant in this piece of paper that I gave them 10 minutes ago, are there any objections? That works if they're standard and there's no deviation from it, right? But if they're listed somewhere in any other place and they aren't all entirely standard, it seems to me that a member of the public could really not have a way to access that. I can imagine a scenario, what you're describing, I think, would be code between the judge and the defense, the prosecutor, perhaps, while not somebody sitting in the gallery. Is that right? Yeah, Your Honor, I certainly appreciate the concern. If it's on a special condition, then I think those actually do have to be orally pronounced unless there has been a written document. And I think you're right to suggest that that written document is probably not going to exist. Special conditions are, by their nature, special. They're not boilerplate. They can't be handed out. But a PSR is often under seal, right? Yes. So a member of the public can't access that. So going back to the scenarios that I think my colleagues were questioning you about, if the conditions are listed in a PSR, which would be a recommendation, I think, pretty standard, right? But that's under seal. So a member of the public doesn't know what's in there. And if a judge took the bench and said, I'm going to oppose the conditions recommended in the PSR, do we need to be concerned that the members of the public, including victims, don't know what those conditions are? We're referring now just to the standard conditions. Let's take that one first. Yeah, I don't want to confuse things. It's an interesting question, Your Honor. I think if there were a reference to the standard conditions, perhaps incorporating, you know, a reference to the applicable portion of the guidelines, that that probably would be sufficient. In our view, it's a best practice to orally pronounce the standard conditions in every case. Certainly if this Court wanted to adopt a rule suggesting that when a victim of a crime is present and has a statutory right to be heard, the oral conditions must literally be read, I agree with you that would be the most capacious and protective rule in that circumstance. Can I ask a reverse question? If the PSR doesn't make any mention of the standard conditions, is it then incumbent on the district court to orally pronounce all the standard conditions that they intend to impose at that point? Would that suffice for due process interest? Yes, if the oral conditions are literally read at the sentencing, we think that complies with due process. As we said, it would also be appropriate to incorporate a written document. If it exists, if it does not exist, we think the due process clause requires a literal oral recitation of the standard conditions. I agree with you with the Central District of California's general order which imposes certain standard conditions as mandatory unless there's a special order from the judge that overrides it. Is that invalid? Is it sufficient in your view? Is what invalid, Your Honor? The Central District's general order. Yes, I mean, the statutory obligation is to make an individualized determination as to the so-called discretionary conditions, the one that 3583D describes as may be imposed conditions. So, again, this is just a straight statutory interpretation question. Our view is that the statute draws a distinction between mandatory conditions, those that shall be imposed, and discretionary conditions, those that may be imposed. Standard conditions and special conditions are just all subtypes of discretionary conditions. All of the hundreds of sentences in the Central District that have been issued in reliance on the background, the understanding of that order, and all of the thousands of sentences issued under Napier's understanding of that, all those need to be redone. And even though, like here, there was no objection, it's not plain error. All of them need to be redone. We're going to have to redo all these. Well, no, Your Honor. It is certainly possible, I expect, in the vast majority of those cases, there's going to be some sort of oral discussion of why those conditions are appropriate. And certainly, as I mentioned to Judge Christin earlier, if the district judge at the sentencing colloquy says, I have looked at the standard conditions, or as the case may be in the Central District, I have looked at the standing order, and it is my judgment, based on the factors in 3553, that they are appropriate for this defendant, that's fine. We have no objection to that. That, I think, would be compliant with the due process laws. This case is very different. If you look at pages 77 to 78 of the record, the colloquy that the district judge had about the conditions in this case, what he says is, quote, the conditions of supervised release are these, and then he lists the special conditions, and then he says, quote, that's it. And I think any lay person, if they hear that, the conditions are these, A, B, C, D, that's it, they're going to interpret that as an exclusive list of conditions, and they're going to be quite surprised to later learn, when they see the written judgment, that there's actually this other set of conditions that were not mentioned at the sentencing. I understand the government's primary argument in this appeal to be that the fact that there is a reference to the standard conditions in the PSR, and the fact that there's a generalized reference to supervised release in the change-of-plea hearing, accords Ms. Montoy a sufficient notice about what those conditions are. And we think that is just not right for the reasons that are explained in Dickels. If she ever interposed any specific objection substantively to any specific ones of the standard conditions. So she did not have occasion to interpose that objection. In the event of a remand, we think there are a number of meritorious objections that could be raised. One that comes to mind is that standard condition 3 requires the probation officer's permission to leave the judicial district, which in this case is the Southern District. Ms. Montoy has lived for all of her time in the United States in the Central District in L.A. That's where her mother and her children live. Certainly, if she had been advised of that condition, she would have objected to it, and quite possibly that condition either wouldn't have been imposed or would have been imposed in some sort of very different way. There are a number of ongoing challenges to numerous of the standard conditions, sometimes frontal constitutional attacks. You know, a number of other circuits have held that standard conditions 8, 10, and 12 are unconstitutional because they deprive the defendant of a liberty interest. There are pending appeals in this court that present the same question. And, you know, quite apart from the standard conditions potentially being unconstitutional or problematic in their own right, there's also the problem here that when you orally pronounce the special conditions but not the standard conditions, it leads to a very confusing outcome. So here, for example, as I mentioned, standard condition 3 says do not leave the judicial district without the probation officer's permission. Special condition 1, which was orally pronounced, said don't go to Mexico without the probation officer's permission. And again, as a layperson, you can understand how if you are orally told don't go to Mexico, you would understand that to be the extent of the limitation and later would be quite surprised to learn that there's actually a more draconian limitation, don't leave the judicial district. And so for that reason, again, we think it makes sense that an actual list has to be presented. And I ask you if we agree with you, what should the remedy be? Should we vacate only the oral conditions that weren't read or the ones that should have been oral, according to your view? So, Your Honor, we think that the appropriate remedy here is to vacate and remand for resentencing, a full resentencing on an open record. That's the remedy that the Fourth Circuit has ordered and that the Seventh Circuit has ordered. And the explanation that they've given is that the supervised release conditions and the custodial portion of the sentence are one part of a single unified sentence. You can't just sort of pull out a Jenga piece and expect that all of the other portions of the sentence would have been the same if, for example, some standard condition either wasn't imposed or was changed. So this court has not really had a chance to delve into the nuance on this because Napier has been the law for... it's been 11 years. But there are certainly other cases in which this court has endorsed what it has referred to as the packaging theory of sentencing. Is it the theory of that, though, that if somehow there was an objection to one of these standard conditions, it would lead the judge to add custodial time? And is that actually better for your client? I'm a little bit surprised that that's a good gamble. So that could also result in a reduction of custodial time. Ms. Montoya is certainly very eager to have the custodial portion of her sentence revisited. She's exhibited excellent behavior in prison. She's working in confinatory... She did get a below-guidelines sentence, right? She did get a below-guidelines sentence, but it was substantially above the sentence that was recommended by the government. You're really asking... I mean, you raise a separate challenge here, challenging the custodial aspect of it. If we think that your challenges to that don't apply, you're saying you should be able to bootstrap off of this argument and reopen everything, even if we think that the below-guidelines sentence was reasonable? That's right, Your Honor. So if you agree with us on the lead argument about the oral pronouncement requirement, the remedy we're suggesting is full resentencing. And in that case, Your Honor, we wouldn't need to reach the separate arguments about the substantive unreasonability of the sentence. We could just bring them back up to Judge Burns at the district court. So I think that's inconsistent with what we did at Wolfchild, right? At Wolfchild, we just vacated the part of the sentence that wasn't explained enough? So Wolfchild is not a model of clarity on this. I've looked at the district court record on remand, and the parties actually agreed there that they did not intend to revisit the custodial portion of the sentence. But the district judge, at least in my reading, did not understand this court's remand to be limited to that issue. Again, you know, it's extremely important to view the sentence as a package. Here, for example, if Ms. Montoya... I'm sorry to pick up, but we don't do that in other areas. If we find specific, say we find specific supervised release conditions unconstitutional, we don't usually, as far as I'm aware, send it back for re-sentencing on everything. We say go back and take a look at the supervised release condition. Well, as I've said, I think there hasn't been a lot of case law from this court in the last 10 years on this question. The case I was mentioning earlier is the United States against Hanson. Your Honor, that's 936 F. 3rd 876. And there the court says, to permit a brief quote, when a sentencing package becomes unbundled due to a judicial determination that the sentence was invalid, the district court should have authority to put together a new package and begin the sentencing process afresh. I think I might as well take it that our case law goes both ways on this, though. You would concede that we've gone both ways on this? I would, Your Honor. Okay, so why in this case should we do what you're asking? So, as I mentioned earlier, it's important that Ms. Montoya have an opportunity to revisit the custodial portion of the sentence. You're telling us... I heard that. That tells me what your client would like to have happen and what might be advantageous to your client. Why is that the best option for us here, rather than taking a more surgical approach? Well, I think there's evidence based on this record that if an objection to the supervised release conditions had been heard, that the custodial portion of the sentence might have been different. So, as I mentioned earlier, the district judge could have heard additional evidence in relation, perhaps, to an objection to Standard Condition 3 about why Ms. Montoya, who's a single mother of five children, needed to be out and have access to the central district and, you know, unrestricted movement. If the district judge had heard a little more color on that, perhaps he would have crafted a sentencing package that had a lower custodial portion and a longer portion of supervised release. That would have been better made to the district court rather than us. I mean, I think the district court would be within its right to revisit it, wouldn't he? And you could make that argument, but, I mean, that seems like a tall order. If we order that here, wouldn't that sort of set the stage for everyone to be making these arguments anytime we remanded on one provision? Is that what the other circuits have adopted? So the circuits are split on this question. And just to be clear, I'm not saying that this court should itself revisit the custodial portion of the sentence or command the district judge to do it to the housing. I'm just saying the district judge should have an option. If we get back to the district judge and he says, you know, I've taken a look at everything and either I'm not changing the custodial portion of the sentence or I'm electing not to deal with this at all, that's fine. We just think that the remand here should be clear that it is within the district court's discretion to revisit the custodial portion if he wants to do that. And could I just tag onto one thing you said earlier, Your Honor, about the other arguments in this appeal? I just wanted to make sure I get this out. I'm authorized by Ms. Montoya to let you know that she is abandoning the arguments on appeal that relate to the propriety of the guilty plea. So that would be the argument about whether or not this is a type B or type C agreement, whether or not the plea is voluntary under Fuentes-Galvez, and whether or not the plea was involuntary because she was not advised of her right to a jury. Ms. Montoya is abandoning those arguments and would like us to focus... This is all about sentencing. This is about sentencing, yes. Are you asking us to adopt... The rule that you're asking us to adopt, would you consider it procedural or substantive? I would consider it to be procedural. It's a procedural argument. I know you could raise substantive arguments. You'd say it's still procedural. Yes, Your Honor. Okay, yes. I think it's a procedural violation that warrants a procedural remedy, which is why I think it makes sense to do a full resentencing at the district court. Counsel, do you think if we ruled in your favor, other sentences that have been imposed without Ms. Dean B, supervisor of these conditions, would have to be undone as well? Your Honor, I think it would depend on what exactly happened in those cases and how recently the sentence was delivered. Certainly there's a way to write this opinion that doesn't open the doors to every sentence that has ever been delivered. I will also say that it's my understanding from this... But what would be the limitations if we ruled in your favor? What would stop every defendant who's been sentenced and who is of the view that the sentence was not orally pronounced? What would stop them from coming in for resentencing at this point? Well, so, one, I think basic limitations on the collateral relief would apply, and the second thing is that, again, as I mentioned earlier, whether or not someone would be entitled to relief, even, for example, in a pending appeal, is going to be a highly idiosyncratic question that varies based on what was said at the particular sentencing hearing. I've discussed this issue with the public defenders. My understanding is that it's common practice in many districts to actually reprint the standard conditions in the PSR or, as the government admits at page 2 of its opposition to the petition for rehearing in bank, to just orally pronounce them. So I don't think this is a huge universe of cases that are going to be affected by the outcome here. I think what we really have in this case is something of an outlier, and this in-bank procedure sort of prevents an opportunity for the court to prescribe a going-forward rule to chop off the outliers but not necessarily to disturb every criminal sentence that's ever been rendered. It would be limited to the people who are still on direct appeal, right? Correct. So if I could just say one other thing about the NAPIER decision, Your Honor. I certainly understand that this court... Can I just follow up on that question? You just said it would be limited to defendants on direct appeal, but earlier you had said it would depend on the limits of collateral relief. So you think there could be a collateral challenge based on an error in imposing supervised release conditions? So certainly it would apply to those who have pending appeals or on direct relief. I confess, Your Honor, I haven't fully thought through the question of how this would interact with a habeas procedure or some sort of other collateral procedure. I'd be glad to submit supplemental briefing on that if Your Honor would like. But again, I think the point that I'd like to make is that this procedure is something of an outlier, what happened in this case. It's not often done that you see a district judge impose standard conditions of supervised release without any reference to them in the PSR. And in your opinion, even in the PSR, if instead of what this one says where it just references the standard conditions, if they listed them or if they attached them as an attachment, that would be enough, in your opinion? So long as the document is incorporated at the sentencing hearing, yes, Your Honor. And so long as the court has assured him or herself that the defendant has been able to review the PSR in advance? Correct. So again, maybe it would help to go back to what we think are sort of the appropriate guardrails here. One is that the PSR, whatever written document is being incorporated, has to actually list the conditions. The second would be that the judge must confirm that the defendant has gone over that document with their counsel and they understand it. The third would be that the district judge has to actually orally incorporate the document. And that, again, is the difference, I think, between this case and Diggles, Judge Collins, is that in Diggles the PSR was actually incorporated at the sentencing hearing and the Fifth Circuit's point was that that incorporation then meant that an objection to the conditions had matured. That is not what happened in this case. And then the fourth guardrail, Your Honor, is that this incorporation by reference procedure absolutely does not free the district court of its freestanding obligation to explain why the standard conditions are appropriate based on the individualized circumstances of the defendant. This court's inmate decision in Cardi is very clear that Section 3583 and Section 3553 require a district judge to make an individualized determination based on the circumstances of the defendant and the nature of the offense. So in some cases it probably would be good enough to say I've reviewed the factors and I find that they're appropriate, but as I was mentioning earlier, in cases implicating a significant liberty interest like Wolfchild or Napaloo, there's an enhanced procedural obligation and also in any event, our view is that the pronouncement is probably going to trigger additional objections by defendants and what the Fourth and Fifth Circuits have called the articulation requirement, the obligation to explain why particular conditions are appropriate, would certainly include an obligation on behalf of the district court to reasonably hear and respond to any objections that have been raised. So it's sort of a long answer to your question, but yes, basically we are fine with an incorporation by reference procedure, subject to those guardrails, which we think are extremely important. It sounds like you agree with Diggles. Is there anything about Diggles that you disagree with, or can we just copy Diggles? Your Honor, it's a 17-0 opinion. I think it's very persuasive. There's nothing in there that I think is wrong. I will say it arises in perhaps a slightly different factual circumstance because it's a... This is a really important question. The rule going forward that you want us to announce, does it differ from Diggles? The answer is no. That's what I want to know. Subject to the... I just want to know what your position is. I don't mean I want a yes or a no. I just want to know what your position is when you keep sort of dodging and weaving around. I apologize. I did not intend to weave, Your Honor. I appreciate your standard. Thank you. I am cognizant that the government in its papers has tried to distinguish Diggles on the basis that it involved special conditions. I think that's the biggest problem. I just want to know your position. Thank you. Reserve the rest of your time. That would be great. Thank you very much, Your Honor. May it please the Court. Benjamin Hawley for the United States. So we agree with the defense that this is a procedural issue, not a substantive one. And because of that, the dividing line that makes the most sense is between standard conditions and special conditions, as opposed to between mandatory and discretionary. The reason for that is that these standard conditions, like the mandatory conditions... Different than... Not to get you off... That is different than all of the other circuits that we've approached here, right? Correct. Well, except for the second circuit, Triskelo, in several cases... We haven't had the chance to update it like we did. Well, there have actually been several decisions post-Triskelo that have actually drawn the line kind of even further to the right in the sense of what they consider basic administrative requirements in the second circuit are considered implied. That's not the rule here, and that's not where the other circuits have drawn the line. Let me clarify something that you stated in your response to the PFREB petition on page 2. You're talking about the practice of oral pronouncement being generally followed in the circuit. I want to make sure I understand that because I'm exploring the same question that Judge Collins has and trying to figure out the impact of other cases. Can you clarify again what practice is generally followed in the circuit? Of course. So, obviously, most of my knowledge is from the Southern District, but my understanding is this is generally true in other districts within the circuit, and that is that most judges will say something along the lines of what is in paragraph 115 of the PSR here. That is, I'm imposing five years of supervised release with the mandatory and standard conditions and the following special conditions, and then they list them out, and they don't kind of go beyond that in terms of listing out the mandatory or the standard. Some judges, at least in the Southern District, will actually have their courtroom deputy print out what those conditions are and hand them to the defendant kind of live, as it were. That's a great practice that is preferred. Could you slow down just a little bit? That's all right. And part of the standard conditions, is it set forth in the PSR in most districts that you know of? So, yes, some districts do set forth the conditions in the PSR. In the Southern District, generally not. It's exactly what you saw here. It generally references mandatory, standard, and then lists out the special. Again, the reason? Are there instances where in response to a sentence like in paragraph 115, a defendant will submit a statement and say, you know, I don't want standard condition three? Absolutely, and so I guess to be clear, the government's position is not that the standard conditions are mandatory or even have to be imposed in every case. The defendant absolutely can and they do object to standard conditions. So, for example, the family condition about not associating with felons if they have a brother or a child or somebody else who's a felon, defendants can and do object to that. In fact, as evidence of that, I point to the amicus brief from federal defenders pointing out the numerous challenges over the years to the standard conditions. Those occurred in the Napier context. Moreover, continuing with Napier, a defendant can still object even if they don't do so at the hearing. It would be on appeal. It's just at that point we're on plain-court review as opposed to abuse of discretion as to the substance. Mr. Hawley, you know, going back to the beginning of the argument of the dividing line, there's a constitutional anchoring and due process as between mandatory and discretionary. I don't see that as between the line that you're proposing with standard and other types of discretionary. Can you explain why you think that that's a line that should be drawn in the context of the constitutional principles we're discussing here? Of course, because that constitutional principle has to do with notice and the opportunity to object. That's ultimately the grounding that we're looking at. Here, a defendant in these types of cases has notice because the standard conditions, like the mandatory, are known well in advance. They're not surprised in any way what those conditions are. As opposed to special conditions, which necessarily are different in every case, both in terms of the topic but even how they're phrased, the specifics of. But there are certain special conditions that are also listed in Section 5B1.3. Yes. Why couldn't we say that there's notice of those as well? So the court could, and that's the approach the Second Circuit has taken. We're not proposing that here primarily because it's just not as bright light of a rule and because those conditions are conditional. They trigger only if a court makes certain findings or if something else happens with the Second Circuit. So when the court makes certain minor or certain adjustments to the standard conditions, do those become nonstandard at that point? Are they special at that point? Yes, they would be special if the court changes what the standard conditions are. Then at that point, unless the court announces it, the defendant can't expect what those changes would be or can't know in advance. And, again, that's why the standard conditions can't be presumed, just because they're known or fixed in advance pre-sentencing. So to the extent the defendant believes their case is nonstandard for whatever reason, they can bring that up at the sentencing hearing. But if those get tweaked, even in a fairly minor way, if it's a conflict as opposed to an ambiguity, then, yes, that would become a special condition. Another question, if the PSR does not make any mention of standard conditions in its recommendations, what then if the court orally pronounces and can the written judgment after the fact include the standard conditions then? Yes, as long as the district court didn't say something along the lines of, I'm adopting the conditions as set out in the PSR, because then the standard conditions would not be included in that. But, again, the notice comes from them being printed in the sentencing guidelines. We know that, in fact, specifically in this case, pages 31 to 32 of the record, that Ms. Montoya went over the sentencing guidelines with her counsel, and that was directly after that the magistrate judge also talked about that there are conditions for supervised release. Did not go into detail of standard versus mandatory versus special. But that's the notice solution, is that those are all printed ahead of time, and unless there's something taking this case out of the standard situation, the defendant can object in that case, but otherwise it makes sense to presume that's what the district court was imposing. Go ahead, please. Without some kind of moral reference to the standard conditions, how can the defendant know that the district court has determined that they're appropriate in using those conditions? In the same way that any, so I point to CART, so in the same way that a district court does not need to go over every 3553A factor for this court to know that it has weighed them appropriately, in the same way those conditions or those considerations for the standard conditions map onto 3553, and so if the court doesn't have to explain in detail its rationale as the custodial portion of the sentence, it would make sense to add an extra requirement as to the conditional or the standard conditions part of the sentence. Ultimately, when the court announces that it's imposing supervised release, as we have been doing under Napier, then we can presume that the district court wants that release to be supervised, and the supervision aspect of it comes from the standard conditions. Meeting with the probation officer, telling the trace the probation officer, keeping the officer updated as to address changes, things of that nature. I'm sorry to interrupt, but there's, I think, a little bit of a break in the logic here. The judge is supposed to consider the 3551 factors in determining sentencing, but the judge doesn't have to impose standard conditions. It's may. So the difference there is the judge is supposed to give some sort of recent consideration as to why those particular conditions should apply to the defendant. That takes it out of the mandatory range and therefore requires some sort of activity by the court in the first instance, doesn't it? So two responses. The first, more generally, is the other circuits that have adopted the defendant's position have not indicated any kind of requirement in that regard of an extra explanation as to what the standard conditions are. The court can simply say, I'm imposing the standard conditions, or I incorporate the PSR, and that's been sufficient. So even though circuits have not. Circuits, the PSR lists the specific conditions so that there's adequate notice so that the defendant can raise a defense. Right, but the rationale, the considerations the district court is supposed to consider in those circumstances, there's no extra requirement that the district court justify as it were imposing those standard conditions. So what the conditions are are generally listed either in the PSR or local rule or something like that. But my understanding of the question was if there's extra justification required or extra explanation of the rationale, and none of those circuits require that as far as I'm aware. Another point about opposing counsel mentions the significant liberty interests that could be affected in the context of a particular case. What's your position on that? So that's exactly why a defendant would need to bring those facts up or object if they thought that was a concern. So to go back to the family example, associating with a felon, a lot of times that's not known, at least by the court, unless and until the defendant brings it up. If they do, then that's what the court is to be making that determination. And if they don't, again, that can still be reviewed. It's just a plain error review to this court as opposed to normal release of discretion review. So it's not that a defendant can't or shouldn't make these arguments. It's just what the standard of review is and at what point they do so. I'd like to ask you the same question that I asked opposing counsel, which has to do with whether we should only be concerned about giving notice to the defendant. What about to the public and what about to the victim? Because some of the scenarios that you're running through, I think, don't afford notice to the victims or to the public. So in terms of, I'll start with the public and then move to the victims. In terms of the public, what the conditions are are ultimately listed in writing in the judgment, which, as far as I know, is publicly available. That obviously comes after the oral portion of the sentencing. And they're sealed prior to the sentencing, presumably, if they're in the PSR, right? Correct, correct. So in terms of public knowledge, the public learns what the conditions are, if not right away. On the back end. Correct, correct. To the extent a victim has a chance. Actually, first in terms of the public, generally the public doesn't have an opportunity to object or to enter into the court proceedings. And so that's why getting that notice in the judgment should be sufficient. To the extent that a victim does have a right to be there and a right to object, then in that scenario, yes, I think there would need to be something more than, as I believe it was you indicating, some kind of code between the judge and the counsel. We would need some indication that the victim knows what those conditions are. Again, the government's view, same standard conditions, solves that problem as to the standard conditions because that's the label that's applied in the sentencing guidelines, which, of course, are publicly. Well, maybe, but it's not that, I don't mean to belabor the point, but it's not that difficult to imagine a scenario like the one Judge Collins has mentioned where the defendant objects to standard condition number three and other folks in the courtroom may not know what that is. True, and I guess, again, as to the public side of it, I'm not sure that there is a right for them to then, it's not critical that they know at that moment what standard condition three is. That comes out in the judgment. If only the public or the victim could raise that, the defendant couldn't be raising an argument on behalf of that, right? I wouldn't think so. I'm not, I don't think so. Well, but we're talking about notice about, it's easy to imagine a scenario where a victim has a serious interest, a specific interest in knowing what those conditions are and the extent to which he or she may have contact with this defendant. Right. And, again, in the victim context, then they need to know what the potential conditions are. In terms of the special conditions, that's already required to be announced orally. In terms of the standard conditions, if the court says, I'm imposing the standard conditions, that's in some reason to believe they mean something different by standard. That is sufficient notice. Is your answer in this hypothetical that we've been kicking around where a defendant requests that standard condition number three not be, without specifying what it is in any greater detail, that a victim would have a right to know what that is? I think the victim would know what that is if the reference is just there's these standard conditions. Your answer seems to be different now than what you said a minute ago. I didn't mean for it to be different. Because the standard conditions are publicly published, they are known in advance, I don't think that there becomes an extra requirement, then, for the court to read it out or to express. You're presupposing that in the hypothetical that we've kicked around that the victim would know what those standard conditions are also because they're in the guideline? Yes, or at the very least on constructive notice, but I would think generally on actual notice as well. But here the court didn't say standard conditions, right? Correct. So you're now saying the court should? That is the preferred practice. It is not the required practice. And, again, that goes back to the issue of the standard conditions are known ahead of time, so to the extent a defendant wants to object to those, they can. They know what those conditions are. And that's where the notice and the opportunity to object comes from. You agree with the assessment that this is a pretty unique case, meaning if we overrule NAPIER, we're not necessarily, even on those direct appeals, we're not necessarily open up the floodgates to a lot of claims because this is not the normal practice. I agree it's not the normal practice. I suppose it depends on how this court writes the opinion. So, for example, if the court did require to pronounce the sentence that the court read out the conditions or can it be more expressed, then that's going to be a lot of cases. If the requirement is just I'm imposing the standard conditions as sufficient, then I agree that this isn't unique and that it's the only case, but it's relatively rare. Most judges make some reference to the standard mandatory and standard conditions. Do you think there is an opportunity to raise these issues in habeas, in federal habeas? I'm not sure, but my initial reaction is possibly yes, because the conditions don't go into effect, as it were, until the defendant is out on supervised release, obviously. I would think generally the way that's going to come up then, though, is that if there's a violation, the defendant at that point would challenge it. So I'm sorry not to give a clear and direct answer, but I think there are ways that it would still be challengeable in those scenarios. It would be because of the oral pronouncement aspect, because that is procedural, right? How would you raise that on habeas? I don't know that you could. My concern is just because it doesn't actually kick in until the defendant is out, that there might be some kind of argument in that regard. I'm in no way conceding that it would sound like habeas. I'm just not entirely sure, but I would not want to rule that out that a defendant could not make that type of argument. What is your view on the remedy question? If we disagree with you, what do you think should be the appropriate remedy? So the remedy should be tied to the problem. So to the extent the problem is lack of notice and opportunity to object, the remedy should be a remand to provide that notice and the opportunity to object, as opposed to an entirely de novo sentencing. That remedy solves the problem. The defendant didn't have the notice of what these conditions would be, assuming that's how this Court decides. So we provide that notice. The defendant gets to object. The district court then weighs it and imposes or doesn't impose the conditions, and that's it. It's a limited remand in that regard. And what about counsel's argument that there's a little bit of, you know, tying together of the sentencing between the conditions and maybe the custodial time or other aspects? So I think that goes to the substance. To the extent that the defendant had an objection to a substantive aspect of it, then that could be tied together. But here this, as we've been talking about, is entirely a procedural problem. So if the defendant doesn't think they got notice and an opportunity to object, we provide that notice and opportunity to object. If at that point then there is a substantive concern, that gets raised at that point. But throughout this litigation from district court through en banc proceedings, Ms. Montoya has never argued what those concerns would be or made any substantive argument. It's entirely procedural. Do you agree with the assessment that our case law has gone both ways on this question? Yes. Okay. I agree with counsel that it's a little bit tricky or nuanced in that because we've had Napier in the background, it hasn't always had to be resolved in that regard. So, for example, some decisions have followed Napier but then remanded for the Court to say which standard conditions it is imposing as opposed to providing extra hearing. It's just the Court then needs to write out, I'm imposing the following standard conditions. That's one solution that's been used. Other districts in other circuits have done it differently. But in general, the government's position is the remedy should be tied to the problem. If the problem is procedural, the remedy should be tied to that procedure. So as Nichols points out, there's an impreciseness to standard versus special. And then you modify the standard, now it becomes special. And not all judges, I suspect, really look at those terms really the same way. Isn't it a lot cleaner to draw a bright line between mandatory versus discretionary? And, of course, we can get to the issue of what constitutes sufficient oral announcement, but what does the government think of that line? So two responses. The first is that I don't think that line is any brighter than between standard and special, the reason being what the standard conditions are is a finite universe, and it is locked in in the guidelines. So the special conditions can go off in any number of ways, but just like the mandatory is a list, the standard is a list. So that's my first response. I mean, you have to know sort of this language that when you say standard, you're referring to the list in the guidelines. I mean, couldn't there be a judge who has his or her own standard conditions and calls them my standard conditions, and then doesn't that get confusing? It doesn't. That's actually the second point of why the bright line between mandatory and discretionary isn't necessarily as bright as it might seem at first glance. For evidence of that, I would point to the Fifth Circuit post-Biggles. So Biggles was 2020, and the court obviously drew the line there between mandatory and discretionary and then kind of went out of its way to say here's what would be sufficient for oral pronouncement of standard conditions. Despite that seeming clarity, there have been a half a dozen cases since then dealing with, well, did the court actually pronounce standard conditions? So, for example, one case, the district court had special or had standard conditions as a standing order, and so it just said standard conditions, and the court had to decide, well, does that mean your special, your unique ones, or the guidelines? In another case, the court said you have to follow the rules of supervised release, and there, over a dissent, the Fifth Circuit held that that did not count as pronouncing the standard conditions. And the point is not how many of those cases should have come out. It's just that that rule seems bright, or that line seems bright initially, but there's still a whole bunch of cases. Is this why you shouldn't really just say standard? You should say as listed in the PSR or as listed in this section of the sentencing guidelines? If there are multiple standards. So, at least in the Southern District, as far as I'm aware, there aren't any unique standard conditions. When a judge refers to standard, the only thing that is labeled standard is in the guidelines. If a judge does have their own, or a district, for that matter, has their own standard, then, yes, I think you would need to specify, or this court could also decide that at that point it's not a conflict, it's just ambiguous. I think that illustrates my point. I don't know that all judges view the term standard in the same way. I don't have the confidence that you do, that when a judge is imposing the standard conditions, that the judge is referencing the standard conditions in the guidelines versus another script that the judge may be using. Okay, let me ask you a related question. Does the Southern District judges get a cover letter from probation that accompanies the PSR, and does that cover letter go to the lawyers from both sides? Not as far as I'm aware, or at least if there is one, I'm not seeing it as a lawyer for one of the sides. So, not that I'm aware of. The discussion of the conditions is. I mean, that was the question I began with, which is that, as I understand the practice in the Southern District, is that the PSR incorporates into its paragraphs the sentencing recommendations. It's not like some districts where it's done as a separate sheet and they not get it. Right, right. So, the standard PSR looks very similar to the PSR in this case in terms of what it includes, what it lays out. It has sentencing recommendations, both custodial and supervised release. It provides what the minimum mandatory portions are, what the probation officer recommends. This is a very standard PSR in that regard. The reason I ask that is that in CDCAL, the judges do get the cover letter, and it lays out verbatim the terms of the conditions of supervised release that probation is recommending. And so some judges use that as a mini-script, and then some judges paraphrase, as I sometimes did. Hopefully it didn't change anything substantive, but, you know, it's a lot to read out. And so for the judges who prefer the full oral pronouncement, you end up paraphrasing. So then when it comes to what standard, that may, I suspect, vary from court to court. Well, and to the extent there's an ambiguity, this court's case law has been clear that if there's an ambiguity in the oral sentence, then that's where the written judgment comes in to fill that in. So if it's ambiguity, then there isn't a problem. If it's a conflict, then I agree that there would be a problem if the defendant couldn't have known what those conditions were going to be based on what happened in sentence. You know, if they're tweaking the standard conditions, for example, or not clear when they refer to standard, which one they mean. Is it a typical practice in the Southern District to use the AO's standard form 245B, which I believe was the form used in this case? In terms of the judgment? Correct. Yes. Actually write out the sentence they use. They pull out the AO's form. As far as I know, there may be exceptions, but, yes, that's in every case that I've seen. And that form has, as one of its preprinted pages, the 13 standard conditions from the guidelines. Correct, correct. And so I don't think this is an issue at any point where a defendant just doesn't know what the conditions are ever. It's just an issue of could they have known those conditions were coming? And, again, in the government's view, the answer is yes. They have the notice of what that would be. To further answer Your Honor's question about that, I mean, what does standard mean? Maybe it means something unique. That would be a problem kind of guidelines-wide. So a district court, for example, is talking about minor role. We don't require the court to then say, well, here's exactly what the guidelines say about minor role. Here are all the factors I'm considering. They do need to walk through those, but they don't have to do it in a way that a defendant wouldn't have to look at the guidelines. Same thing with acceptance of responsibility. A court can grant that or deny that without getting into detail of all the competing factors. It needs to analyze that. It needs to consider that. But there's no requirement that the court read those out in the same way that if it just references minor role and it references standard conditions, absent some other fact, we can be on the same page about what the court is talking about.  I'm sorry. So are you agnostic about what we do here, or do you think we, if we do something, or I guess that we don't need to do anything, or if we do something, do you have certain comments you want to make? I mean, and I guess an additional question is if we adopt or apply DICLs, what's your comment on that? So starting with, well, so first we would argue that this court should continue with Napier, that standard conditions are implicit unless there's some reason to believe otherwise. The court doesn't order them. If the court disagrees and goes with the DICLs approach, then we agree with the second half of DICLs as to what is required to count as a standard, a pronouncement of standard conditions, and that is very minimal. The court just needs to say, I'm opposing the standard conditions. Alternatively, it can adopt a probation. As a matter of fact, DICLs is discretionary versus mandatory. Correct. And so, again, we don't think the court should draw the line there. To the extent it does, then the court should be clear, as DICLs tried to be, as to what counts, what is sufficient for pronouncing standard conditions. And there the government's view would be that simply saying, I'm imposing the standard conditions would be sufficient, absent some reason to believe, again, there was unique standard conditions. We mean something else by standard. I guess I read DICLs as saying you need to make sure that you're referencing a specific list that you know the defendant saw. So, yes, I guess in our view, then that would count. The guidelines would count for that. So if the court disagrees with that, I still think the remedy, or the way the opinion should read is the court needs to be clear about what the conditions are, but saying I'm imposing the standard conditions is sufficiently clear. Again, absent scenarios where we have multiple standards floating around. In that case, then a court would need to be clear as to which standard it is applying. And then, again, to finish the answer, in terms of the remedy, as I mentioned before, the remedy should be tied to the problem. So if this is a procedural lack of notice, we should give notice, opportunity to object, and go forward from there, as opposed to a de novo resentencing. I'm happy to answer any other questions on this or the other issues. Okay, thank you. You win the prize for the week, because you left time on the clock. Rebuttal. So just a few very quick points, Your Honor. First, I think it's important to note that there's a difference between notice that the standard conditions exist in some sort of metaphysical sense and notice that they are actually being imposed in your case. I take it my friend's argument on the other side is that everyone knows that the sentencing conditions exist. Standard conditions must be interpreted to mean what's listed in the sentencing guidelines. The problem here is that the district judge never incorporated any written document and never said, I am imposing the standard conditions. I think I heard you. Because we have as the background rule in Napier, imposition of these mandatory and standard conditions is deemed to be implicit in an oral sentence, imposing supervised release. So he operated on outward that if he just said I'm imposing supervised release, then under Napier he brought in the standard conditions. Yes, Your Honor, I agree with that. I think that Napier is dead wrong to say that these conditions actually are implicit. There's an extensive discussion of this in the D.C. Circuit's decision in Matthews in which they say, you know, there are a lot of things that are extremely particular and granular here. For example, you have to report to the probation officer within 72 hours. It's not 96. It's not, you know, 48. You have to work at least 30 hours a week. It's not 40. It's not 20. The D.C. Circuit says that degree of granularity is just not implicit and that it would be an error to say otherwise. The second point I wanted to make, I'm not sure I got it out in my initial argument, is that we think it's really important to think about the relationship between the pronouncement to, excuse me, the pronouncement requirements and what the Fourth and Fifth Circuits have called the articulation requirement, which is the obligation to justify the sentence you've imposed. And what the Fourth and Fifth and Seventh and D.C. Circuits have said is that a salutary benefit to the rule that we're advocating for today is that requiring oral pronouncement makes it less likely that district judges are just going to reflexively impose standard conditions that may not be appropriate for an individual defendant. And then the last thing I'll say, Your Honor, is that, you know, I understand from the argument we've heard from the government and from their papers that they sort of view this as what they called in the opposition brief an empty formalism. There are 100,000 people that are on federal terms of supervised release in the United States right now. The standard conditions often create significant infringements on their liberty interests, control who they can see, whether they can associate with their loved ones. Requiring oral pronouncement is absolutely necessary to ensure that those standard conditions are not imposed when they are an ill fit for a particular defendant. That is not a formalism. It is required by the Due Process Clause, and it has a significant impact on people's everyday lives. We therefore ask that this Court reverse and remand for a full re-sentencing. Thank you very much, Mr. Dawson, Mr. Hawley, for your oral argument presentations here today. The case of Cynthia Leal-Ontoya v. United States of America is submitted. You are adjourned. Thank you. Thank you. This Court for this session stands adjourned.
judges: MURGUIA, RAWLINSON, IKUTA, CHRISTEN, NGUYEN, FRIEDLAND, NELSON, COLLINS, SANCHEZ, THOMAS, DESAI